## J. MONTGOMERY HARE

### *v.*

## ALBERT O. HEADLEY.

After a decree of foreclosure and sale a fire occurred in the mortgaged premises. The complainant mortgagee having received a certain amount from fire insurance effected by the mortgagor, the second mortgagee obtained an order that said amount should be credited on complainant's decree, and the surplus, after paying the amount thus due complainant and the costs, be paid into court. The decree provided that the proceeds of sale should be appropriated to the second after the payment of the first mortgage. On a bill filed by the assignee of the fire insurance companies against the second mortgagee, claiming, under an agreement with the first mortgagee for subrogation, to be entitled to the fund in court—*Held*, on demurrer for want of parties, that all parties to the original suit who had an interest not only in the money, but in the manner of its disposition, should be made parties to the suit.

On demurrer to bill for want of parties.

*Mr. J. Frank Fort* and *Mr. Edward Q. Keasbey*, for the demurrer.

*Mr. Edward A. Day*, contra.

GREEN, V. C.

This bill, styled an original bill in the nature of a supplemental bill, is the outcome of the proceedings in the case of *Mutual Life Ins. Co. v. Schwab, 6 Dick. Ch. Rep. 204.*

It was decided on the application under consideration in that proceeding, that the present complainant could not be made a party to the original suit and obtain relief by petition, and leave was granted under his prayer for other relief to file an original bill, or an original bill in the nature of a supplemental bill. The facts set out in this bill are substantially those alleged in the petition referred to, and will be found stated in the report of that case.

This bill is filed against Albert O. Headley alone, praying that the complainant may be decreed to be entitled to be subrogated to all the rights of the Mutual Life Insurance Company, in and to the decree and execution in the suit of foreclosure, and to the remainder of the moneys realized upon the said sale, over and above the amount paid to the said company, and to the fund in this court, and that the clerk of this court may be required to pay over the said fund to the complainant, and that the complainant may have the benefit of said suit and the proceedings therein, with such other and further relief as the case may require.

The final decree in the original suit was entered January 27th, 1892, adjudging, among other things, that there was due to the complainant therein, the Mutual Life Insurance Company, the sum of $44,672.74 of principal and interest on its mortgage, and taxes paid by it, with interest from the date last aforesaid; and that there was due to John H. Kase, under the second mortgage, the sum of $8,520; and that there was due to Albert O. Headley, on his judgment and mechanics' lien, the sum of $4,199.27, and fixed the amount and order of priority of sundry subsequent encumbrances on the mortgaged premises, and directed that the whole of the premises should be sold to satisfy the amount due the complainant and defendants respectively.

Between the entry of the final decree and the sale under the execution a fire occurred in the buildings on the mortgaged

32

premises.  Policies of insurance against loss by fire had been issued to the Schwabs, the owners, who had appointed the loss, if any, to be paid to the mortgagee, the complainant in the original suit, and it received, July 15th, 1892, from the fire insurance companies the adjusted loss, amounting to $6,114.64. The sheriff of Essex county, under the *fieri facias* issued on the decree, sold the mortgaged premises August 23d, 1892, for the sum of $45,100, which sale was duly confirmed by this court. The purchaser afterwards completed his bid and the sheriff delivered to him a deed, receiving the amount of the bid, with interest, amounting to $45,257.85.

On the 8th of September, 1892, Albert O. Headley, who was one of the defendants in the original suit, filed a petition therein, showing that he was the holder by assignment of the Kase mortgage, which by the decree was payable next after the complainant's mortgage, and claiming that he was entitled to receive the amount realized on the sale, over and above the amount due the complainant, after crediting the amount received from the insurance.  On presenting this petition, an order was made in this court directing the sheriff to pay into court the surplus moneys over and above the amount decreed to be due the complainant, with interest, costs and sheriff's fees, after deducting therefrom the sum of $6,114.64 received on said insurance policies.  In pursuance of this order the sheriff paid the complainant the amount due, after crediting it with the amount received from said fire insurance, to wit, $41,458.93, and after retaining sheriff's fees &c., paid into court the sum of $3,484.02.

The original mortgage in this case was made March 31st, 1888, by John M. Riley and Joseph K. Osbourne, who were the owners of the mortgaged premises, and who also subsequently executed the Kase mortgage.  Riley and Osbourne, by their deed dated January 25th, 1890, sold the premises to Gabriel· Schwab, Nathan Schwab and Leo L. Schwab, partners composing the firm of G. Schwab & Bros., who, as charged in the present bill, until the foreclosure suit, continued to be the owners of record of the lands and buildings thereon erected, notwithstanding the fact, also charged therein, that they, by deed dated

March 23d, 1891, conveyed all their right, title and interest in the mortgaged premises to Frederick Butterfield & Co. It was assumed on the argument that this deed was to be treated as a mortgage.

According to this bill the said fire insurance companies entered into an independent agreement with the mortgagee, the life insurance company, by which the interest of the latter was absolutely insured, notwithstanding default or forfeiture on the part of the insured owners, provided it paid any premium not paid by them ; and in such case, on payment of any loss by the fire insurance companies to the mortgagee after any such default of or forfeiture by the insured owners, they .were to be subrogated to all rights of the mortgagee under the mortgage. This agreement was not referred to or attached to any of the policies, which contained nothing outside of the contract of insurance with the owners other than the appointment of the payment to the mortgagee ; nor was the fact that such an agreement had been made alleged or disclosed in the original bill filed by the mortgagee, the Mutual Life Insurance Company.

The present bill charges that so far as the Schwabs were concerned, the policies were forfeited on several grounds, among others, the non-payment by them of the premiums ; but it appears by the bill that the mortgagee, after execution issued, applied to be allowed certain amounts paid for premiums for insurance, and an order was made directing the sheriff to raise said amounts in addition to the amount named in the decree.

The fire insurance companies having assigned their claims to the complainant, he files this bill for the relief before referred to.

Several causes of demurrer were assigned, but it is unnecessary, at this time, to consider any other than those setting up a want of parties.

This is a bill to obtain a sum of money in court in pursuance of the decree and order of the court made in a former suit. It is filed, not by a party to that suit or an assignee of or claimant to the share of a party entitled under the decree or order, but by an entire stranger to the fund, claiming the same by right of

subrogation to the original security on which the former suit was based.

It is not simply a controversy between the parties to the suit, with the usual assertion, denial and contention of adverse rights and interests, but a contest over a sum of money in the possession of the court, of which it is the custodian for the rightful owner. In the former class of cases the province of the court is simply to adjust the rights and equities of the parties, and its decree cannot affect the rights of anyone not a party to the suit in the subject-matter of the litigation. In the latter, the court has a duty imposed on it to pay to no one not entitled to the fund, and it should, for its own satisfaction, in order to rightly determine the ownership, see to it that every one who *may* have an interest therein is properly before the court with opportunity to establish his rights, and, if not otherwise concluded, contest those of other claimants. Nor should the inquiry in such cases be limited to those who have a direct interest in the money in court, but should also embrace those whose rights thereto are contingent. This bill is called an original bill in the nature of a supplemental bill, but it also partakes somewhat of the nature of a bill of review, for it seeks to give a direction to the surplus money different from that indicated in the original decree and the order made at the foot of the decree. When that is the purpose of the suit, not only every one who has an interest in the fund sought, but those who have an interest in the effect of the decree, should be made parties. Every one who was a party to the decree, and who still may have an interest therein, must be a party to a bill of review. *Ludlow* v. *Macartney, 2 Bro. P. C. 107.*

It is argued, on the other hand, that as the fund in this case is not large enough to satisfy the second mortgage and judgment controlled by Mr. Headley, to whom the whole fund will, by the decree and order, go if the complainant is not entitled to it, it is necessary to make only Mr. Headley a party, he being the only one other than the complainant who can have an interest in the fund in controversy. This is not, however, the rule. Chancellor Zabriskie, in *Van Keuren* v. *McLaughlin, 6 C. E.*

Hare *v.* Headley.

*Gr. 163,* which case was overruled, but on another point, in *6 Stew. Eq. 287,* says (at *p. 165*): "The rule laid down by *Story Eq. Pl.* § 72, that 'it is not all persons who have an interest in the subject-matter, but, in general, those only who have an interest in the object of the suit, who are ordinarily required to be made parties;' and by Calvert, in his treatise on *Parties to Suits in Equity p. 10,* 'the propriety of a person being made a party depends upon his interest, not in the subject-matter, but in the object of the suit,' has been the rule adopted and acted upon in this state." And Lord Lyndhurst says, in his judgment upon the case of *Small* v. *Attwood:* "The general rule is that all persons who are interested in the question must be parties to a suit instituted in a court of equity." *Calvert p. 9.* And at *p. 10,* the word "interest" when used as a criterion of the proper parties to a suit, means interest in its object, and not interest in its subject-matter. Applying that rule it would seem clear that not only those who, under the decree and order would possibly get some part of the money, are necessary parties to a suit of this character, but also those whose interests as established by the decree or order would be affected by its modification. If the Schwabs, defendants in the original suit, are liable on the second mortgage or judgment held by Headley, as they may be, they have an undoubted interest in having this money appropriated to the payment of those encumbrances. It is no answer to say that it does not appear that they are liable if, as before stated, the court, for its own protection, will see to it that every one whose interests may be affected is brought in. It should appear that in no event resulting from the suit can such interest be jeopardized. Besides, the right of the complainant to the relief sought rests on the allegation that the policies of insurance were forfeited by the acts or neglect of the Schwabs. If the policies were enforceable by the Schwabs, the complainant has no right to the fund in court. No such issues were presented in the foreclosure suit and its decree does not touch such questions. How can those questions, with the possible interest of the Schwabs referred to, be litigated and determined unless they are made parties and have an opportunity to be heard?

What has been said as to the Schwabs as owners of the fee,. may also be said as to F. Butterfield & Co. Counsel, on the argument, treated their conveyance as a mortgage, but it is said in the bill to be an absolute deed on its face, and if so, that firm may be liable on the second mortgage and interested in having the fund applied to its payment.

I am unable to find and have not been referred to any case in point, but I am of opinion that in cases of this character involving the payment by the court of surplus moneys, all parties. to the former suit, except those who, it clearly appears, cannot be interested in the disposition of the fund, should be made parties to the proceeding.

I think it appears that the original complainant has been paid in full, and no disposition of the fund in court can possibly affect its interests.

The demurrer is sustained so far as relates to want of parties, with leave to complainant to bring in the parties indicated.